Council for the first case, Steel Metal versus, let's see, Stromberg Metal, we're ready to hear you. Mr. Pierce? Yes, Your Honor. Good to have you here, sir. Thank you. It's very nice to be here. Apologize to you for the delay. We've been involved in other proceedings. I understand. Yes, sir. We're ready to go and look forward to the arguments of you and your fellow council. Your Honor, this is an ERISA case in which the plaintiff funds claim that they are due contributions consistent with a staffing ratio that is contained in a collective bargaining agreement. This case was resolved by the lower court on cross motions for summary judgment. The lower court ruled in favor of the plaintiff's motion and against Stromberg's motion by making two conclusions. First, the court concluded that those staffing ratios did relate to the contribution rates, and second, that Stromberg had not complied with the correct ratio that would be applicable. We submit that both of those conclusions by the trial court were incorrect and that, in fact, if this court were to determine that either one of those summary judgments should be granted in favor of Stromberg Metal. Well, let's assume we don't agree, we stay with the one-two ratio. You contended throughout that it should be a one-one ratio and your accountant, or Ms. Bigelow made an unsubstantiated statement to that effect. Well, where's the evidence that goes against the one-two ratio? Because the auditors also put in their report, they did this on a one-two ratio. Your Honor, first, what Ms. Bigelow said was, and to get the numbers right, yes, the collective bargaining agreement by itself has a one-to-two ratio, one journeyman to two non-journeymen, but the parties entered into two amendments to the collective bargaining agreement that are referred to in the sheet metal industry as resolution 78s, and those resolution 78s, those amendments, which the other side acknowledges are controlling documents, they come up with a one-to-four ratio. And so that is a controlling document for the two big jobs, which the plaintiff acknowledges is the crux of this case. So you say it should be one-to-four? Yes, Your Honor, for those two jobs, which as once again, the plaintiff says, that's the crux of this case. And Judge Boyle applied two to one, one to two. That is correct, Your Honor. What I want to point out is, I mean, there's no dispute that it is a one-to-four ratio for those jobs, but what the lower court did was to say, well, there's an excuse for not applying the one-to-four in this case. And they came up with two excuses for not applying the one-to-four ratio. The first excuse was that, well, we didn't keep good enough records to apply a one-to-four ratio. But the evidence for that comes from the declaration of Mr. Kenneth Anderson, and Mr. Anderson makes it very clear that he has no idea what the records were. He says that that's what the auditor, some unnamed person, thought that the records showed. So that was clear hearsay in and of itself, and it should have been disregarded, and that would have been the end of the story right there. And so the one-to-four, which the other side acknowledges is the appropriate ratio, as long as there's no excuse, the one-to-four should control. Well, one thing in this case, and you just have to help me out, it seems to be like you're conflating hearsay with authentication, and the report got in without objection as to its authentication. Is that not right? No, the two are very separate. And the point is, is that, you know, Rule 56 has been amended some time ago. The plaintiff, any movement on summary judgment is not held to a strict standard of authentication. The point is, is that nobody has ever said that these documents are audits, no one has ever said that these documents are accurate. No one, no witness has ever come forward to say, oh yes, these are the audits, or these are accurate, or that there's summaries. Did you object to authenticity? Yes, Your Honor, I did. And the way I did it was by pointing out over and over and over again throughout the entire case, including in the last thing that I filed in this case, that these are simply alleged and purported, and that is authentication, because all authentication is, is to say that something is what it purports to be. And when I say it's, they're only alleged, then I am acknowledging that they are not. And until someone comes forward, some witness comes forward and says, here are the audits, then there's nothing more that I need to do. But the point is, is that they are hearsay documents. They're clearly... Did you ever say they were not authentic? You, you, you did say they were hearsay. You kept saying things were hearsay, hearsay, hearsay. Yes. But I want to be clear. Is that a, does that mean the same thing? Is that what your position is? I do not. It preserves an objection as to authenticity, by objecting to hearsay. No, Your Honor, that is not my position. Those are two separate things. And I'm making clear they're two separate things. And I want to be totally clear to the court. I never said these are not authentic. What I said is these are only alleged. And that was enough because they have never had any witness in this case come forward and say that what they are, no one's come forward. No witness has come forward and said, here are the audits. Uh, so number one, that is a separate issue. So if the court were to say for some reason that that that's a waived issue, okay, well then we go to hearsay and they're clearly hearsay. And what the, uh, plaintiff funds are trying to suggest that there must be some sort of, uh. Courts are introduced all the time in trials, in litigation. If someone can introduce them, but no one's made any effort to introduce them. No, here's the point, Your Honor. We have throughout the case, we've called out the fact that no auditors come forward in this case. And no one said that these reports are accurate and we have affirmatively stated on a mythology basis that they are inaccurate and when we called them out on that, it would have been very simple for them to get an affidavit from the auditor and said, oh, these are, yeah, these are the reports and yes, they're accurate, but they won't do that. And they won't do that because the auditors know that these reports are not accurate. We found one of the problems and to come back to, uh, the point is, is that, you know, the one to four ratio is that the only reason they didn't apply the one to four ratio is because they said that we didn't have the records. And Ms.  And so that was a, uh, contrary bit of evidence. And with that contrary bit of evidence that kicks out the reason for not including the, the, the one to four ratio. Well, is your, I mean, you, you are talking about hearsay and authentication and accuracy, right? And you definitely raised a hearsay objection below and maybe not authentication, but my understanding of the hearsay objections, hearsay objections usually say you can't enter a report unless you have someone who knows how the report was generated, right? And there's arguments in front of us about, were they all treated as journeymen? Did the one to four apply? Who should it apply to? How was this report made? There are questions about that in front of us that seem to go to hearsay more than they do to authentication or, I mean, you're characterizing it as these conclusions in the report. That's right. We don't know anything about these reports, Your Honor, because no witness has come forward to say anything about these reports. These reports were attached to the declarations of Ms. Morris and Mr. Anderson, and they never even acknowledged there were any attachments to their declarations. It seems obvious that they had no idea there were going to be these documents attached to their declarations when they signed their declaration. Now the records underlying this audit, of course, are the employer's records. They're your client's records, but the audit does something to the records, right? It analyzes the records in a certain way. And is that what you're claiming we don't, we don't have insight into because of the hearsay problem is, is the terms of the audit, not the contents of the records? Yes, Your Honor, that is correct because, you know, the initial point is whether or not these staffing ratios, which exist in countless collective bargain agreements across the country, in any way relate to contribution rates. And they don't even apply to the contribution rates because they, the two are separate from one another. They don't talk about one another. There's never been a case as far as we... Isn't that kind of a contradictory argument? Because you, I was confused by this and I'm not accusing you of contradicting yourself, I'm asking you to help me. I, there's an argument that the one to four ratio applies and you argue about is it one to four, is it one to two? But there also seems to be, maybe it's not fully fleshed out until your reply, but, you know, looking at this document myself and you make this point in the reply, is the temporary employees, it looked to me, they're all classified level, where, which is a different argument than one to four. It's saying that they all are this one level and we don't need a ratio, that they're just all classified. And is that, are those arguments compatible? Are they alternative arguments you're making or, you know, am I off base on thinking that's even an argument you're advancing? Well, Your Honor, what I would say is there's a great deal of confusion in these reports. I mean, no one, in addition to no one ever offering the reports, no one's offered to explain what these reports mean. And you can't do that. I mean, I can... What's your position on, it's, is it a, should the one to four ratio apply or should all of these employees or all these workers be categorized as classified employees? So there's no one in the one to four. It's five across the board. They're just all the same. The one to four ratio should apply to the resolution 78 jobs, which are the vast majority of what we're talking about. And Ms. Bigelow in her declaration said that's exactly what we did. And that is undisputed. It's undisputed that we were within the ratios. Now it's our position. We didn't have to comply with the ratios. We pointed that out in our brief. These are two separate things. They don't refer to one another. Even the union acknowledges that's not the purpose of the, of the staffing ratio. It only relates to job productivity and nothing else. That's what the union says. And this is a contract between the union and the employer. And I would suggest that what they say should be given great deference so long as they're not saying something inconsistent with the contract. You're saying both. I'm saying one, the ratios don't apply. The staffing ratios don't determine contributions. Those are two separate things. But one to four is, here's the point. We had an independent contractual obligation to... I'm trying to find out what your position is. I thought that Judge Boyle applied a one to two ratio. Yes. As I recall. Yes. And I thought you said that's wrong. It should have been a one to four ratio. Yes. So, but now you're saying, you know, that's something else. No, no. It should have been one to four. And he came up with two excuses. And excuses were one, relied upon hearsay evidence, which was directly contradicted by Ms. Bigelow to say that he had no idea what it was. I thought you were going to say that Judge Boyle came up with excuses. You said that Judge Boyle came up with excuses. I don't like that. Oh, right. He came up with two reasons. He came up with two reasons. One of them is that we did not have good records and we have, and consistent with this court's Jacob's decision, he had an obligation to consider Ms. Bigelow's declaration. It said our records do have that. And Mr. Anderson has no idea. His, he had pure hearsay. And all he said is, well, you didn't produce documentary evidence. At very best, that goes to the weight of that evidence, which should not be judged at summary judgment. His other excuse is said that we didn't allow these people's skill to be evaluated so they would know what class they should be in. There is nothing in the record that supports that the skill is to be evaluated. To the contrary, the declaration of Mr. William Blank makes it very clear that that's not what determines if you're a journeyman. You could be the very best sheet metal worker in the world, and that still doesn't make you a journeyman. If you're a journeyman, the local union has your name on a list. And if you're on the list, you're a journeyman. And if you're not, you're not. And that determines what you are. And if the court has no further questions, I'll sit down. I hope my time is up. You saved some time. Yes. Ms. Campbell. Good morning. Good to have you here, Ms. Campbell. Thank you, Your Honor. May it please the court. My name is Carla Campbell. I'm here for the plaintiff's appellees. In this case, I will jump right to the court's questions and Mr. Pierce's arguments about the ratios. Before I do that, though, I just want to mention what is on appeal here are questions about damages. About what? Damages. The Stromberg has not appealed before this court, the lower court's determination of liability. They have not appealed the court district court's analysis of the Darden factors, the employee-employee relationship. We're really here just about damages. And so I will direct my attention to that. Question, how much? Exactly, Your Honor. And what do you have to say about this hearsay, authenticity stuff? Excuse me. We do not believe that the audits are hearsay. We mentioned before the district court that these are audits by nature are summaries of Stromberg's own employment and payroll records. They're classic rule 1006 summaries of voluminous records. They're not hearsay under 801 because as records of Stromberg's own, as summaries of Stromberg's own records, they are essentially admissions of a party opponent. But the records aren't, your audit's not being used to prove the contents of voluminous records, right? The point of the audit is not to say, well, there's too many employment records, so we're going to put it in a easy to understand chart, right? The audit does something to the records. It applies a method to the records and comes to a conclusion. So I don't see how rule 1006 gets you over the hump. Okay. Then under rule 801D, these are admissions of a party opponent. They are statements by an auditor who was an authorized, a person authorized by Stromberg themselves as signatories to this collective bargaining agreement to come in and audit their books, to do this audit process and provide the funds, the information that they need to be able to pursue collection. That's largely what we argued before the district court. Alternatively, I would say that these are rule 803 exceptions to hearsay. These are records of regular business activity. The funds we've submitted, we've put them into the record using the testimony of Mr. Ken Anderson, Mrs. Deanna Morris, Mr. Don Detty, who were all employees of the fund or third party administrators. Did they say they were business records of the fund that's in the record here? They didn't, they did not say these are business records. They said that these are records, records of the funds regularly conducted activities. And so... That sounds like about the same thing I asked. Okay. I'm just want to use the exact language of... The records of the funds, what did you call it? Regularly conducted activities? Exactly. That's in the record. Where is that? In the declaration? It's in the declarations. There's also testimony from Mr. Nicholas Brazel, who was the 30B6 deponent representing the health fund in this matter, who talked extensively about the fund's regular processes. Sorry, I thought I read the declarations and it didn't mention the audits. It didn't mention the attachments. Are you saying that the declarations actually say this, the audit summary that's attached is a business record? It does not say... Or a regular, you know, a record of our regularly conducted activities. It explains the, it explains the fund's collection activities. And then it said it received this audit summary from the third party auditor, Caliber CPA group. I wish that it had another statement that said, which is attached here to his Exhibit A, we wouldn't maybe be having this argument, but it is quite obvious the dates match up between the declarations and the audits themselves. I would say... Well, they mark there as an exhibit or either a number on them, like Exhibit One, or I'm just trying to get it straight. But did you say that they're attached to the declarations? Correct. And just so... At the same time as the declaration? Exactly. Just for the court's ease of reference. For example, Joint Appendix 2005 is one of the audits. You can see right below the page number, it has the date. A few pages before that Joint Exhibit 2002 is where Mr., is the declaration of Mr. Anderson, who says, I received these October 22nd, 2020 audits. Same date from our third-party auditor that shows, and he goes through the delinquency that it shows. It was attached to that and filed simultaneously. Who's the third-party auditor? Caliber CPA Group. Do you have that name in there? Yes, correct. Is that name on the audit that's attached somewhere to the declaration? I don't see it on the summary. I don't want to belabor the court's time by looking all the way through it from the first page. I will say that multi-employer Taft-Hartley funds use this process regularly. There are other cases, district court cases from the circuit. The Raby case we've cited extensively, the Conditioned Error Court, in which multi-employer fund employees were used to introduce audits that the calculations were based on. If the court finds that insufficient, then we would ask the court, if the court is inclined to remand, just the question of damages to the district court. I do want to address a few comments made by opposing counsel about, we are happy to go back to the district court, if we believe that you can affirm, obviously, but we are happy to go back to the district court and introduce an affidavit from the auditor, Caliber CPA Group, the auditor has always been willing to participate in this lawsuit. We've- Why didn't you do all that at the time you were in the district court? We just made a decision that what we presented was sufficient. We went back and looked at other district court cases that found those types, similar types of audits to be sufficient, and we made a judgment call about cost, if we made the wrong call, then that was on me, and we are happy to go back to the district court and present an audit from, or a declaration from Caliber. We, we disclosed them in our Rule 26 disclosures. Have you requested to, or have you thought about requesting to supplement the record on appeal? We did not consider that. There's a provision in Rule 10E of the rules of appellate procedure that permits a party to request the court of appeal to accept a supplement to the record on appeal, if the circumstances justify it, whatever the terminology is, lawyers can look at it, I'll leave that, that's up to you. Well, look, look at, talk about section 1059A1, at least two of our sister circuits have concluded that when a plaintiff proves the fact of liability, the burden then shifts to the employer to prove damages. Did they offer any evidence on the damage question? No, Your Honor. And thank you for that question. I think this might clear up the issue of the different ratios. Um, I, I was going to say as a segue into Your Honor's question, um, if the court were to remand it or ask for further information about which audit should be applied, frankly, you know, we'll, we will get to the same conclusion, we will apply the one to two audit because, precisely because Stromberg did not keep the, the one to one ratio is not in the collective bargaining agreement in any place. The one to four ratio would have applied on specific job sites, not across their entire, um, employment practices, if they had kept adequate records in order to do that, as they should have done under, um, section 1059. And so our auditor and also the declaration of Mr. Anderson show that those records were not sufficient for us to determine which particular job site. There's a dispute of fact, right? Is there a dispute of fact between the parties on whether the, what was given to the auditor was sufficient? The, the auditor went to Stromberg's workplace and combed through their own records. So if audited did not find it, it's, it's, it's because it does not exist. But my question is we're on summary judgment and the court granted summary judgment in your favor. And so if the, if the funds say the accountant told us that they didn't have sufficient documentation and the employer says we did give them sufficient documentation and if they needed help interpreting it, we would have helped with that. Um, and the court concludes, you know, the parties disagree about this. Um, on summary judgment, doesn't it have to draw the inference in favor of the moving for summary judgment? We, we agree. The plaintiffs agree with the district court that that single statement in an, in a declaration by Stromberg saying the auditor's numbers were wrong without any documentation to show in what ways they were wrong is insufficient to create a genuine issue. Well, what do you, I mean, you have a single statement from someone who's not the auditor that the auditors told me they didn't have sufficient documentation. And so it seems like there's a dispute about a fact that's material because the reason they applied one to two was because they didn't have the documentation. Certainly it's material. I'm not, I wouldn't disagree with that. I would say it's a not, that single statement is not enough to create a genuine dispute in light of not only the audits that I just referenced, all the, there were several prior versions, draft audits, um, but you agree, right? That the one to four ratio does apply to some job sites that some of these workers were on. It's not, it's not as though you just have an isolated statement that, you know, one person at the employer says, no, everything the auditor said is wrong. You know, that wouldn't get over the bar, right? But there's evidence to support it and you don't just beat the grounds for it. It's, uh, but the reason that one to four wasn't applied at all was because of the deficiency and the district court didn't resolve whether there was a deficiency. It just accepted one side's argument on it instead of the others. It accepted one side's argument, which was supported by documentation, by Stromberg's own admissions. I'm happy to go through those. In the record were Stromberg's calculations of the hours that they owed, monthly reports that they submitted to the funds, statements of accounts, records that were subpoenaed from the temp agencies, Ms. workers from the temp agencies, such as social security number, job classification. Um, there simply, there simply was not enough for anyone affiliated with the plaintiffs, whether they're in-house folks or a third party auditor to go through and determine how individuals that had come from a staffing agency to work for Stromberg, which particular job site that they were working on, on which particular days. And that is what under section 1059 of ERISA, that is what Stromberg had the burden to prove, excuse me, if they wanted to apply a lower ratio than what's mandated by the collective bargaining agreement. Well, as a matter of fact, there's some case law out there, that when they have inadequate records, uh, there is a just and reasonable inference, uh, as to the amount of damages owed. And I assume that's what Judge Boyle did. Correct. He applied a default ratio in the, which is the one to two ratio in the collective bargaining agreement. He did that because, um, because Stromberg was not able to prove the, uh, the one to four ratio that they were advancing. In Raby, the court said, um, uh, District of Maryland Court, Raby's speculative and unsupported conclusions are sufficient to establish a genuine issue, a material fact with respect to the audit's conclusions. The same type of argument and condition error system from the District of Maryland. All of those are based on section 1095, which imposes the burden on the employer to come up with specific, um, detailed evidence, not just a single conclusory statement, if it wants to contradict the fund's evidence. It's kind of like in the, in the context of the FLSA that the employer has the burden to prove, um, to prove damages if it, if it doesn't keep records. So the default provision would be because the main collective bargaining agreement had the one to two ratio. And in instances where it would have been a one to four ratio, if there's inadequate records to establish that, then he would go to the default position. Precisely. And the Supreme Court has allowed that to happen. Precisely, Your Honor. Yes. The collective bargaining agreement has a one to two ratio. One during- That's where Judge Will got it? Precisely. It's in, it's in the collective bargaining agreement. I can give you the, a citation if you want. The, um, one to four ratio was something that the union, who is not a party to this, one of the two unions who's not a party to this, negotiated as kind of a special ratio with Stromberg that would only apply to two specific jobs at issue. Um, the rationale behind that is it helps folks like Stromberg to be able to competitively bid those jobs with a lower staffing ratio. Uh, the plaintiff funds were not participants in that, but we have always said we would honor those one to four ratios on those specific jobs if they were able to provide us with documentation to show which temporary worker worked on which job, on which, how many hours a day on that job, which is what they would have to do, and they have not- Well, get back to Ms. Bigelow's. Y'all seem to have some difference of opinion about the value of her testimony. What, what is it she said or didn't say helps you? Um, that helps me? Um, Ms. Bigelow did talk a lot about, uh, in some of her affidavits, the back and forth that's involved in, um, in the, the, uh, audit process. It's not like an auditor just goes and then produces a report. There's months. In fact, this audit lasted almost two years. There's a lot of back and forth. In that same declaration, Ms. Bigelow does say that, uh, I think it was in the context of, um, uh, Stromberg was making payments for these temporary workers for some period of time and then stopped. What did she say that hurt you? She said that hurt us is this single statement that she said that, yes, we did provide the auditor with sufficient, um, sufficient, uh, records to establish the one to four ratio. Um, I, I, why is that not a, a dispute of material fact? You have one witness who says they didn't give us the records and one witness who says we did give you the records. It's not a genuine dispute of material facts because we have doc, substantial documentation that I just mentioned in the records. You have more evidence that they didn't give you the records. We have all the evidence. We have documentary evidence. But they have someone who would be the person with knowledge about whether they gave you the records saying we gave them the records. Right. Without attaching any of those records to her declaration, without ever providing those records. And so my point is just that a single collusory statement, which is contradicted by all the record evidence before the district court is not enough to satisfy, um, the employer's burden under section 1059 of ERISA. Well, they're not, I mean, they're trying to prevent summary judgment. They're not, they're not carrying, there's no burden on them right now. There's, you, you only get to, as I understand what you're talking about flipping the burden is if you don't have sufficient factual, you don't have sufficient records from the employer. Right. And so that's the whole question is, were there sufficient records from the employer? And I just don't know how Judge Boyle resolved that in favor of the party moving for summary judgment. Okay. Maybe I could frame it in the context of rule 56. So rule 56, federal rule of civil procedure 56 puts on, I believe it's C2, puts on, um, the non-movement, the obligation to come forward with evidence sufficient to create a genuine dispute. And so our position is in the face of all of the records, of the documentary records and the evidence that I just mentioned, that doesn't create. Your opponent does a, draws a, a red light, uh, comparison, right? That, you know, you have one driver who says it was green and one driver who says it was red. Um, imagine the driver who says it was green also has, you know, three other witnesses who say it was green and, you know, some sworn affidavit, you know, they have more evidence. Um, but you still have one person on the other side who says it was red. Um, why is that not a material dispute of fact? It is a material dispute of fact. It's not a genuine material dispute of fact. So, so you think the person who says it's red would, we could grant summary judgment against them. So no one agrees with you. If three other people say it was green, you're getting, we're throwing you out of court. If, if the, if the person who says it's red has three other people on the other side saying it's green, and then, uh, to use the analogy, if the court were to send this back to the district court or ask for a Rule 10e supplementation, and I who also says it's green, which not, which in that context would not only be an affidavit, would be equivalent to a video camera showing that the light was green, then yes, that's not a, that's precisely my point is that under Rule 56c2, that's not a sufficient, a conclusory statement that's overwhelmingly contradicted by evidence is not sufficient. The photo would be different, right? If you had a photo of it at the time of the accident, right? Which I guess the analogy here would be, if you present it to the court, here are the records and here is how you can, how it's impossible to get a one to four from it, right? And then the other side says, no, actually, here's how you read the record, you know, and, and there's a discussion about how to read the employer's records. But here, the court just said, Mr. Anderson says they didn't, that the auditors told him that they didn't have the records and that seemed to be the whole basis for it. And maybe, maybe, uh, maybe the auditor, a declaration or an affidavit from the auditor would essentially be equivalent to a photo. And again, as I've said, we're happy to introduce that. I'm, I can tell you, I can represent to the court exactly what it will say, which is that the light was, the light was red. So, um, it will say exactly what Mr. Anderson said, and it will say exactly what the district court said. So, um, the, the, I will mention on the comments. So I only say that because, uh, Mr. Pierce suggested that the auditor would never show up and present testimony. It, that's not, that's not accurate. They would have been happy to do that. Um, the one-to-one ratio, um, is nowhere. I, I'm still not clear what ratio it is. Um, Stromberg has asked this court to apply or what they asked the district court to apply. Again, we would apply the, the one-to-four, the one-to-two is in the collective bargaining agreement. We would apply the one-to-four if we had the records to do it. A one-to-one ratio or classifying everyone as a low-wage classified workers simply has no basis in any of the agreements between the parties. Um, I see that my time, yes, yes, it is. So, uh, thank you very much. Thank you. Mr. Pierce. Yeah, Stromberg most certainly is contesting liability. I mean, we've asked that summary judgment be entered in our favor. And one of the principles for that is because, uh, the staffing ratios, which are very common in collective bargaining agreements, simply do not relate to contributions. Those are two totally separate things. We've pointed that out in our brief. And if the court decides on that point, then, uh, that's the end of the case right there. Um, we were consistent with the ratio. Ms. Bigelow states that unequivocally and no one has ever contested what she said. I mean, what she said is that we were in compliance with the one-to-two ratio for the one-to-two jobs and the one-to-four ratio for the one-to-four jobs. So we're totally consistent. And, uh, we, uh, I mean, this is the suggestion now that, uh, well, maybe there's a hearsay exception. That's never been suggested before. And there clearly is no hearsay exception for privately retained auditor's reports. And that's what we've got here. We don't have any witness who says that these are audits. We don't have any witness who says that they are accurate. And we certainly don't have any witness who says that they are summaries or accurate summaries. Do you agree that you do have liability or you suggest you don't owe the fund anything? Uh, that is correct, Your Honor. You say you don't owe me anything. That is correct, Your Honor. Uh, because they're basing it upon these, uh, a couple of reasons. Number one, uh, the staffing ratios don't control contributions. Number two, even if they did, we were in compliance with those ratios. And, um, you know, Ms. Campbell wants to suggest, well, we've got a lot of records. She's not saying that the records have been submitted to court in evidence. Uh, I don't know what records she's talking about. Uh, when it comes to establishing, um, uh, whether we had accurate records for the auditors, uh, she's also suggesting, well, the auditors did this, the auditors did that. There is no evidence from what the auditors did. All we have is hearsay evidence. More than anything else, what this case is about. Declarations. Yes. Declarations are in the record. But not of the auditors. Declarations are, don't have to be of the auditors. They have to get them, she says she can spruce them up and say they're, they're records of the company. Uh, those are not records of the company. And to answer a question that you had, the name Calibri does not appear on any of these attachments that are unidentified to these declarations. So I want to point that out. Uh, did they, did they do it, all of your records? We know that the people from Calibri came down and looked at our records. We talked to them. We answered all the questions that they had. Whether they ever completed an audit, we have no idea. Did you offer any calculations to show that your, your, uh, uh, you owe no money? Well, there is no calculation to show that we don't owe any money. I don't know what calculation, I mean, we have offered the auditors a lot of information and we showed it to them. And based upon what we showed to them, that would show that we don't owe any money. Um. Well, it seemed to me the way this thing got off track is a temporary worker situation got out of hand. And that's what it appeared to me at the end of the day, there weren't any records about temporary workers. Uh, and that just, it's my surmise that it's a temporary worker situation that has gotten this thing up. Well, that's what started it. But no, there was more than adequate records about the temporary workers, Your Honor. What the point is, is we know the hours worked and that's all the contribution requirement of the CBA requires. All you do is you look at that classification and they all would have been classified workers and you look at the hours worked and that's how much is owed and you don't go to any kind of, uh, ratio to say, well, even though you're not a journeyman, we're going to require contributions as though you were a journeyman, that would be inconsistent with another provision of the collective bargain agreement and it's a general principle of contract interpretation. You don't interpret provisions to be inconsistent with one another. And once again, you know, the, the, even the union agrees with our position. That's not the purpose of the staffing ratio. And so what we have here is, um, the, the only reason that the, uh, the court below gave for not applying the four to one ratio, which Ms. Bigelow unequivocally without anybody disputing said that we were in the four to one or one to four is that, uh, we didn't have the records and I do understand that there is authority that says, well, if you don't have the records, then yeah, it could be held against you. That's a valid reason, right? That's a valid reason. If that were true, but we pointed out that our declaration says we have the records and, and, and, and that is the only competent evidence on that point. Their evidence was pure hearsay evidence. More than anything else, this case is about summary judgment procedure and hearsay evidence. Everything that they brought to you is hearsay evidence. There's been no witness who's made any reference to these and they're saying, oh yeah, we got lots of records. Well, they're not, they've not been made a part of the proceedings here. Um, and I will say this is, is if, if this case does have to go back to the lower court, I would certainly request that this court rule on that issue of whether or not, uh, I would request that if this court thinks that it's necessary for, to be remanded for anything, um, and of course I would hope the court would rule totally in my favor. I acknowledge if you rule totally against me, that's the end of the case both ways. But if it goes back on some sort of remand, it is my request to the court that you do rule upon this issue of whether or not the staffing ratios have anything to do with contribution rates. That is the initial question, which the court below gave very little attention to. Uh, we pointed out that the two have nothing to do with one another and to try to apply them, which no other court has tried to do, despite this being a common provision among, uh, collective barting agreements. Um. You're asking us to get an advisory opinion on the matter that's between, involved in the labor? No, you're not. I'm asking you to rule in my favor completely and dismiss this case. That's what I'm asking. But if, uh, I'm, I'm asking, I'm asking that summary judgment be, summary judgment be granted in favor of Stromberg, Your Honor. I'm just saying that, uh, the court's going to do what the court's going to do. And I just want the court to be very well aware of this initial issue. It's purely a question of contract interpretation that I believe this court could handle. And if it has to go back, then I think it would be appropriate for that to be resolved. And I would make that request. I have one, one more question about that ratio business. The reason you have a ratio is like for the journeyman, uh, their contribution is more than the other three classifications. And so you establish the ratio as one to the, to the journeyman, and it takes two of those lesser classifications, you make a contribution equal to the journeyman's contribution by combining two of the other classes. Is that the way it works? Uh, I'm not sure. And if you had a one to four, one, uh, one journeyman and the contra, would make X contribution. It would take contribution from four, three of the other character, uh, categories to equal a journeyman's. And that that's the requirement of, that's how, that's how the sum of money is, is calculated. Uh, as I understand your question, no, Your Honor, I would disagree with you on that point. The, the number one, as the unions pointed out, and we agree, the purpose of the ratio is to establish a degree of productivity and scale on the job to make sure you've got enough qualified people on the job. Now, as to the contribution rates going to the plaintiffs, that's something totally different. And as we pointed out in our brief, the contribution rates go hand in hand with the benefit rates, including, you know, for these, uh, classified employees, there's no contribution for them for the first 90 days and they get no benefits for 90 days. But the journeyman, there's a large contribution. They get great benefits and they get it immediately. So what I would say, Your Honor, is, as I understand your question, you're asking me is, does, do two non-journeymen make up one journeyman as far as contributions? And I, no, that's not true, Your Honor. These are negotiated rates. The rates relate to the benefits that are being provided. And what's happening in this case is they want the journeyman contributions, but they don't want to pay out the journeyman rates. And that's the problem that we have here. And that's why these ratios, staffing ratios, should not apply to the contribution rates. Thank you. Thank you, Your Honor. It's good to have you all here. We appreciate your help. We'll take a matter under advisement.
judges: Robert B. King, Allison J. Rushing, Henry F. Floyd